Patricia Stephens DUE and Reubin Rushen Kenon, Plaintiffs,

v.

**FLORIDA AGRICULTURAL AND MECHANICAL UNIVERSITY, Board of Control for the State of Florida, and Dr. George W. Gore, Jr., President of Florida Agricultural and Mechanical University, Defendants.**

No. 947.

United States District Court
N. D. Florida,

Tallahassee Division.

Nov. 18, 1963.

---

Herbert Heiken, Tobias Simon, Howard Dixon and S. George Albion, Miami, Fla., for plaintiffs.

Ralph E. Odum, Asst. Atty. Gen., and Joseph C. Jacobs, Asst. Atty. Gen., State of Florida, Tallahassee, Fla., for defendants.

CARSWELL, Chief Judge.

## STATEMENT

Complaint was filed by plaintiffs on October 24, 1963 alleging that they were each indefinitely suspended from Florida Agricultural and Mechanical University, a State supported institution of higher learning by order dated October 19, 1963. They seek in this proceeding a preliminary and permanent injunction requiring their reinstatement as students on the grounds that they have been denied the guarantees of due process established by the 14th Amendment of the Constitution.

Hearing was held November 1, 1963 at which time counsel for each of the named defendants appeared, waived service and filed motion to dismiss on the grounds: (1) There is no substantial Federal question; (2) The complaint fails to allege that plaintiffs have exhausted their administrative remedies provided by Florida Statutes; and (3) "The complaint shows on its face that defendants were convicted after trial by the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, of contempt of court."

Following rather extensive preliminary consideration of the issues of fact and law thus presented, counsel for plaintiffs and defendants stipulated with reference to certain basic facts, all disclosed by the record, and testimony was taken of the two plaintiffs at their own behest and of two members of the University disciplinary committee who were called by the defendants, most of which relates to the events of October 17, 1963 and which culminated in the indefinite suspension of the plaintiffs as students that day. Plaintiffs' request for time to file memorandum brief within four days was granted with defendants to respond within three days. After preparation of the transcript of this hearing and careful review thereof and consideration of the briefs submitted, the following Findings of Fact and Conclusions of Law are entered pursuant to the Federal Rules of Civil Procedure. The record is virtually devoid of disputed fact, but since the disposition of this case here rests on the facts themselves they are set forth in full detail.

## FINDINGS OF FACT

1. Plaintiffs were students at Florida Agricultural and Mechanical University, a State supported institution of higher learning located in Leon County, Florida.

2. On October 3, 1963 in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida plaintiffs Patricia Stephens Due and Reubin Rushen Kenon were adjudged guilty of contempt of that court and each was

sentenced to pay a fine of One Thousand Dollars, or, in default thereof, to be confined in jail for a term of six months.

The full text of this order is attached to the complaint here.

Each plaintiff paid the fine under protest and filed notice of appeal to the appropriate reviewing court.

With reference to this order, and for purposes of this litigation before this Court, counsel for plaintiffs has stipulated as follows:

"I will stipulate that they were guilty of criminal contempt and were so held." (TR.)

3. On the morning of October 17, 1963 the Acting Dean of Students telephoned each of the plaintiffs individually, asked if they had received a letter from the University calling for their appearance before the Disciplinary Committee. Each replied they had not received such letter. The Acting Dean then advised each of them to return to the campus and contact Mr. J. Luther Thomas, Chairman of the University Disciplinary Committee.

4. That same day plaintiffs returned from their respective pursuits, Kenon from Marianna, Florida, and Mrs. Due from Jacksonville, and presented themselves, separately, to Mr. Thomas, Chairman of the Disciplinary Committee, in the faculty lounge on the first floor of Tucker Hall, the main classroom building on the campus, sometime between three and five o'clock in the afternoon.

5. The full Disciplinary Committee was present and in the process of considering matters before it with its Chairman, J. Luther Thomas, presiding. Committee members in attendance were:

A. A. Abraham
Mrs. L. B. Clarke
G. W. Conoly
T. A. Jackson
T. M. Jenkins
A. L. Kidd

The Student Handbook states that the Disciplinary Committee shall consist of five members, although by practice established for at least six or seven years this committee has actually consisted of seven members appointed by the University President.

All seven of the members of the committee and its Chairman had been duly designated for such responsibility by the President of the University sometime prior to these events. There was no change in the composition of this committee at any time shortly prior to the pertinent events.

6. Some thirty-seven students appeared before the Disciplinary Committee that day including these two plaintiffs. All the affairs of the committee were conducted in the faculty lounge of Tucker Hall, the main classroom building of the University. Mrs. Due and Kenon appeared separately sometime between three and five o'clock in the afternoon. Mrs. Due for approximately fifteen or twenty minutes and Kenon for a somewhat longer period of time. Kenon testified that the two doors leading to the hall were locked, while Chairman Thomas and T. M. Jenkins, Dean of the School of Law and also a member of the Disciplinary Committee, contradicted this, each noting that there was intermittent entering and leaving of the room throughout the proceedings with no evidence or suggestion of a locked condition.

The evidence shows that all the proceedings with reference to these plaintiffs were conducted at normal hours, in an easily accessible room. Although the point has not been belabored, the plaintiffs' development of testimony about the general physical arrangements of the hearing room requires a specific finding in this regard. That finding is here made: There is no evidence indicating unusual or oppressive inconvenience to plaintiffs or anyone else in the physical appointments and general atmosphere of the hearing.

7. The hearings followed substantially an identical course. Kenon appeared before the committee first and his hearing lasted approximately forty-five minutes. Mrs. Due's hearing lasted approximately fifteen or twenty minutes. Upon

entering the lounge each plaintiff was asked if he or she had received the letter from the Disciplinary Committee referred to above. When each denied having received the letter, the Chairman of the Committee then read the text of the letter to them advising them, individually, of the charge which had been made against them by the Acting Dean of Students. The substance of this charge was that each had been convicted on October 3, 1963 in the Circuit Court, Second Judicial Circuit, in and for Leon County, Florida of contempt of that Court.

This conviction was the stated and sole basis for the charge that these plaintiffs had violated item 6 of the provisions of the University's established rules and regulations as set forth in the Student Handbook which reads:

"Disciplinary action will be taken against students for: * * *.

"6. Misconduct while on or off the campus. This includes students who may be convicted by University officials, or city, county, or Federal police for violation of any of the criminal and/or civil laws."

Following the reading of the charge the plaintiffs were interrogated about the charge of contempt conviction and matters leading to conviction. Each was given opportunity to respond, and each, in fact, did respond.

The fact of conviction for contempt of court was not denied, but each plaintiff stated to the committee their respective views and attitudes about conviction, and gave their version of the events which led to their conviction. Essentially they stated their position before the committee to be that the contempt conviction was the result of the Circuit Court's erroneous findings that they were leaders of student demonstrations and that they had violated that Court's earlier restraining order. They insisted they were not leaders but merely part of a group, and, therefore, they should not have been singled out, in effect, for more severe punishment than was accorded others also charged and convicted in like circumstances.

The secretary of the disciplinary committee testified that " * * * Mr. Kenon talked to us fifteen or twenty minutes about his various ideas and his different abilities and things that he might have done here and there in connection with demonstrations."

There was no indication expressed by either plaintiff that they did not understand the nature of the charge against them, nor was there any request by plaintiffs or comment by the committee with respect to calling witnesses or securing counsel. There was no recording of the proceedings, either by stenographer or mechanical device.

The hearings of Kenon and Mrs. Due were closed in the same manner as all others then conducted. The Secretary, who is also Dean of the School of Law, described it thus: "He (referring to Kenon) was asked if he had any statement, summarizing statements, or anything else that he might like to say to the committee, and when he had completed his final statement he was told he might be excused."

The committee voted to suspend Kenon and Mrs. Due on the charge as stated. On October 19, 1963 the following letter was sent to each of the plaintiffs:

"You are hereby advised that pursuant to the regulations in the Student Handbook, relating to students 'convicted by * * * city, county, or Federal police for violation of any of the criminal and/or civil law,' you are suspended indefinitely from this institution.

Sincerely yours,

UNIVERSITY DISCIPLINE COMMITTEE

Abraham, A. A.
Clarke, L. B. (Mrs.)
Conoly, G. W.
Jackson, T. A.
Jenkins, T. M.
Kidd, A. L.

/s/ J. Luther Thomas
J. Luther Thomas
Chairman"

8. The rules and regulations of the Board of Control of the State of Florida, the State's governing board of its educational institutions including Florida Agricultural and Mechanical University, include the provision:

"4. *Appeals by Students*

"a. The constitutions of the various institutions shall provide for the procedure of appeal by students within the respective institutions on all matters the student feels he has been aggrieved. If after a hearing before institution officials, a student believes a decision is unfair, he may appeal to the Board.

"b. The appeal to the Board shall be in writing and shall be submitted to the Executive Secretary with a copy to the President of the institution concerned with-in thirty days after the decision is rendered by the institution, and shall cite all reasons for dissatisfaction with the previous decisions. The Board shall investigate the matter thoroughly and make its decision thereon which shall be final and binding for all purposes."

9. Both plaintiffs knew on or before November 1, 1963 of their right to appeal the decision of the disciplinary committee to the Board of Control.

10. The following telegram was sent sometime prior to 10:36 P.M., October 17, but the undisputed testimony of the Disciplinary Committee is to the effect that it has not received the telegram, and from the legend on its face it could not have been received by the addressee President of the University until many hours after the conclusion of the subject hearing.

"CFW OCT 17 1035P EST
146 NL PD
BD SPL CHG ACCT

DOCTOR GORE, PRESIDENT

TALLAHASSEE FLO

FLA A AND M UNIVERSITY

Notice is hereby served upon you, of our demand on behalf of Patricia Due, of all her rights under the 14th Amendment to the United States Consitution (sic), in the Florida A and M University disciplinerary (sic) proceedings now pending against her including without limitation an open and public hearing on specific charges made known in advance with the right to council (sic), the ability to produce witnesses on her behalf, to be confronted with the witnesses against her and the right to cross examine same, a substantial adherence to rules of evidence, and a determination by a fair and impartial tribunal goverened (sic) by standards promulgated in advance. Failure to provide the foregoing constitutes a denial of due process of law and an affront to the American ideal of fair play which should not be forthcoming from you.

Herbert Heiken and Tobias Simon
Attorneys at Law"

---

## CONCLUSIONS OF LAW

Both plaintiffs and defendants cite the case of Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir., 1961) as authority in point on the determinative issues of law presented by these facts, and this Court concludes that Dixon is, indeed, the most current, explicit and applicable statement of the law governing the disposition of this case.

Judge Rives, speaking for the majority there said succinctly: "The question presented by the pleadings and evidence, and decisive of this appeal, is whether due process requires notice and some opportunity for hearing before students at a tax-supported college are expelled for misconduct. We answer that question in the affirmative."

██ This is language so unequivocal that it can scarcely be denied that there is inherently a substantial Federal question involving the due process clause of the 14th Amendment of the Constitution of the United States. Defendants' motion to dismiss on the ground that there is no Federal question here is untenable in view of the allegations of the complaint to the effect that there was no notice of hearing and no opportunity to be heard.

██ This is not to say, however, that every allegation of denial of some Constitutional right alone and automatically impels the exercise of United States District Court jurisdiction without reference to some framework of established remedy and sound procedure. Confusion of jurisdiction with the proper exercise of jurisdiction is not novel in the law. Where tribunals of review are readily available, and standards and procedures clearly defined, it has long been held that some recourse to them must be made, or at least attempted, before the Courts abort that normal process.

From concepts of orderliness, itself a vital requirement of fairness and due process, our Courts do not, and should not, lightly dismember this structure of government by short-circuiting fixed responsibility at initial or intermediate stages.

Were all the practical difficulties of step-by-step judicial supervision and review soluble, there is sound reason to recognize and encourage those charged with immediate responsibility in their special field to police their activities with a measure of confidence that their judgment has at least some immediate, though latently reversible, authority.

All asserted wrongs may be tested, and we pray, ultimately righted in the Courtrooms of our country after full-scale judicial review, but the sheer diversity and complicity of our society, and the needs for its growth, has produced through necessity a multitude of supervisory and reviewing tribunals in virtually every area of our national life. Some operate under specific legislative authority, state or Federal, with precisely defined powers and procedures. A list of such quasi-judicial bodies would include the National Labor Relations Board, state boards of barbering and cosmeticians, Fish and Game Commissions, regulatory agencies in the broad fields of commerce, medicine, public utilities, and countless others.

No matter how ancient their origin, no matter how specific their power or from what generative source, none of these are islands of autocracy. The immense power to revoke the barber his license to carry on his livelihood, to fix fares, to compel reinstatement of an employee, is subject always to Constitutional requirements of due process, and challengeable in an appropriate Court.

Plaintiffs here argue correctly that our appropriate Courts do, and should step in promptly at any point upon certain conditions, among them showing of immediate and irreparable harm to one party without a commensurate jeopardy to the other, or where the action taken is on its very face invalid or taken by a body invalidly constituted. This is equated with violation of due process which demands an immediate staying, a quick remedy.

██ Applied to the educational field, the Dixon case, as already noted, has made it clear that a student expelled from a tax-supported institution has been denied due process if he has not received notice of the charges against him or if he has had some opportunity for hearing.

Judge Rives went further lest this bare holding on the facts presented in Dixon be misconstrued. His opinion at pages 158–159 for the majority in that case states the minimum criteria of due

process governing disciplinary bodies of tax-supported institutions:

"For the guidance of the parties in the event of further proceedings, we state our views on the nature of the notice and hearing required by due process prior to expulsion from a state college or university. They should, we think, comply with the following standards. The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college. In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection. If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled."

It is against this criteria that facts of the plaintiffs' cases here fail.

■ The facts here simply do not support plaintiffs in their premise. The disciplinary committee was duly established and organized by standard, well-defined procedure. It functioned in a normal manner. Its action is not invalid on its face. Nor can it be said that the order of conviction of contempt of Court, upon which the suspension was predicated, is invalid on its face. What has been said earlier about the wisdom of giving some imprimatur of at least immediate authority to those concerned with disciplinary matters at educational institutions applies especially to orders of duly constituted Courts.

■■ Plaintiffs' argument that their conviction for contempt in the Circuit Court cannot be equated with "misconduct" as stated in the Student Handbook is without merit. At the very least such conviction is a violation of law, civil or criminal. The basis of the suspension on this clearly-stated charge is supported fully by the evidence. The disciplinary committee was not bound to suspend, but it plainly had the authority to do so after notice and an opportunity to be heard. Considerations leading the decision of the disciplinary committee obviously involve a whole range of factors affecting the institution, respect for rules and regulations as well as the needs of the plaintiffs themselves.

Its judgment in its field should not be lightly disturbed, especially in view of

a quick and ready method of administrative review.

There was notice to each of these plaintiffs, the charge was made explicit, and each was afforded full opportunity to be heard, and, in fact, was heard to the point where each said he had nothing more to say.

A fair reading of the Dixon case shows that it is not necessary to due process requirements that a full scale judicial trial be conducted by a university disciplinary committee with qualified attorneys either present or formally waived as in a felonious charge under the criminal law. There need be no stenographic or mechanical recording of the proceedings.

Procedures are subject to refinement and improvement in the never-ending effort to assure, not only fairness, but every semblance of fairness. More specific routines of notice and advisement may be indicated in this regard, but a foisted system of rigid procedure can become so ritualisitic, dogmatic, and impractical as to itself be a denial of due process. The touchstones in this area are fairness and reasonableness.

These hearings were not precipitously or secretively convened "Kangaroo" courts stripping one of a fair and reasonable chance to give account of his version of the case.

There are no magic words of incantation which will guarantee this, but, by the same token, the difficulty cannot be the excuse for not making every effort to see that fairness is accomplished.

This is the standard by which this case must be decided. We are not here testing the legality of students' activities prompted by whatever view of the status of the law with respect to use of theater facilities, which was the background of the Circuit Court's order of contempt conviction. We are not here testing the legal sufficiency of that conviction. On its face it is unquestionably valid, and the action of the Disciplinary Committee bears a like mark of validity.

Nothing in this opinion is intended to be construed as tending to control or direct the actions of the Board of Control upon any appropriate review by that body. Its authority to affirm the suspension or to reinstate both or either of these students is governed by its Rules and Regulations and by the requirements of due process.

Plaintiffs have made reference to a case entitled Woods v. Wright filed in the United States District Court for the Northern District of Alabama (Southern Division) which neither counsel nor court have found reported. Accepting, however, plaintiffs' statement on brief about this case that "there appears to be good law * * * that where a person stands to be irreparably harmed by action taken by an administrative body which is invalid on its face," such is not the case before this Court.

Appropriate order is entered in accordance herewith this date.