**FILMON PROCESS CORP.**, Plaintiff,

v.

**SPELLRIGHT CORP.** et al., Defendants.

Civ. A. No. 1514–63.

United States District Court
District of Columbia.

Oct. 9, 1967.

Irwin Lavine, Washington, D. C., Morton Robson, New York City, and Edward C. Gonda, Philadelphia, Pa., for plaintiff.

William D. Hall, Washington, D. C., for defendants.

## OPINION

HOLTZOFF, District Judge.

This is an action arising in part under the patent laws and in part involving a charge of an improper revelation and use of a trade secret.

The principal cause of action is one for patent infringement, pleaded in the first count of the complaint. The patent claimed to be infringed is a patent to W. Ploeger, Jr., No. 3,010,559, issued on November 28, 1961. The title to this patent was assigned to the plaintiff by mesne assignments. The name of the invention as given in the patent is a "Printing Ribbon". The invention consists of a specific type of printing ribbon, namely, a ribbon consisting of two layers: one being a layer of material that absorbs the ink; and the other being a nylon film lying back of the first layer. The two layers are fused together solely along their extreme elongated edges.

There are two principal issues. The first is whether the patent is valid, and the second is whether the patent is infringed. The defendants claim that the patent is invalid in the light of the prior art, in that the step taken by the inventor does not constitute the product of the inventive faculty but is merely the result of mechanical skill of a person who is reasonably skilled in the art.

■ No doubt the inventor had a desirable and a constructive and useful idea. Unfortunately, the hopes and aspirations of many a worthy inventor are frequently blasted and dashed to pieces when it is discovered that, unbeknownst to him, someone else had previously trodden the same path and had made the same discovery and contribution to the sum of human knowledge. In this respect, of course, the patent law differs from the law of copyright. A person has to be the first inventor as well as an original one, in order to be accorded or granted the monopoly of a patent. The discovery of the activities of a prior inventor is a disaster that brings grief to many a person who feels that he has conceived a new and novel invention; and if he gets a patent, the patent just keeps the word of promise to his ear and breaks it to his hope.

■ In the course of the prosecution of the application for a patent, a number of items of prior art were cited by the Examiner as bases for a rejection of the application. In a recent case in the Court of Customs and Patent Appeals, Application of Winslow, 365 F.2d 1017, 1020, Judge Rich of that Court gave a very graphic and vivid explanation of how to analyze prior art in connection with determining the validity of a patent. He said:

"We think the proper way to apply the 103 obviousness test to a case like this is to first picture the inventor as working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him."

The principal patent cited by the Examiner in the course of the prosecution of the application was the patent to Phelps, No. 2,044,630, issued on June 16, 1936. At a later stage of the proceeding in the Patent Office, a patent to Francis, No. 2,657,157, issued on October 27, 1953, was also cited. Each of those two patents disclosed a ribbon consisting of two strips or layers, one an inking ribbon and the other a shielding strip, attached together. It was apparently the view of the Patent Office that these two patents met Claim 1 of the application in its original form. That claim read as follows:

"A ribbon comprising an elongated strip of flexible, pliable, absorbent ma-

terial, an elongated strip of flexible, pliable, impervious material, said strips being in juxtaposed surface-to-surface relation along their entire length and sealed together along their elongated edges."

Phelps disclosed a structure in which the two strips or layers were fastened together at intervals. Francis described a structure in which the two layers were joined together adhesively by a portion of their own substance. The applicant for the patent in suit then differentiated his application from these two references by narrowing his claim down to the feature of fusing the two elements or layers together solely along their edges. With this limitation, the patent was granted.

 The result is that the first claim of the patent in suit was modified, in order to secure favorable action, to read as follows:

"A printing ribbon comprising an elongated strip of flexible, pliable, absorbent woven nylon, an elongated strip of a flexible, pliable, imperforate ink, impervious nylon film, said strips being in juxtaposed surface-to-surface relation along their entire length, and fused together only along their extreme elongated edges, and within the absorbent woven nylon strip being impregnated with ink."

In other words, the patent actually granted is a very narrow one, and is limited to a ribbon consisting of an absorbent nylon strip and an impervious nylon film, fused together only along their extreme elongated edges. The inventor manifestly may not now claim any more than the narrow claim that he accepted as a condition of the granting of his patent. It is well established that what is surrendered by an applicant in the course of the prosecution of his application in the Patent Office cannot later be recaptured by construction.

This principle of law was summarized by Mr. Justice Stone in Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132. At page 220, at page 239 of 61 S.Ct., he said:

"It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected, and the claim allowed cannot by construction be read to cover what was thus eliminated from the patent." [Cases cited.]

Then he continued:

"The patentee may not, by resort to doctrine of equivalents, give to an allowed claim a scope which it might have had without the amendments, the cancellation of which amounts to a disclaimer."

Thus we are confronted with a very narrow patent, receiving its life solely from the one limited feature of fusion along the edges, and solely along the edges, of the two strips. The defendant now relies on a German patent to Gruendel, No. 966,174, issued on June 27, 1957. The defendant claims that this feature, which was the carrying element of the plaintiff's patent, was disclosed by Gruendel.

 The Gruendel patent was not cited by the Patent Office. These circumstances give it greater weight than a citation referred to by the Patent Office, which was overcome by the applicant in the course of the prosecution in the Patent Office. It is no reflection on the Patent Office, because it happens very frequently, that its original search did not lead to a discovery of this German patent.

Gruendel refers to the fact that inked ribbons consisting of more than one layer, had been used in the past, and he states that:

"In all of these cases an intimate bond between the ink ribbon and the covering means was obtained over the whole area."

He indicates as an element of his invention that the two layers, the inked ribbon and a thermoplastic film, should be bonded together thermoplastically on a very small strip along the longitudinal edges. He states further that Figure 1 of his

patent "shows an ink ribbon with a partially overlaying cover film, which is loose on its surface and joined at the borders only". His claim likewise points to this feature as being the carrying element of the invention.

Claim 1 of the Gruendel patent reads as follows:

"An ink ribbon, covered on one side by a thermoplastic film and joined to said film by thermoplastic bonding, characterized in that the film (2) is joined to the ink ribbon (1) along the borders (3) only."

It is clear, therefore, that the carrying element of Ploeger's invention, and the basis on which he was awarded his patent had been previously disclosed and described in detail in the German patent to Gruendel, which was issued several years prior to the time when Ploeger made his application for a patent in the United States.

To be sure, the Gruendel patent does not refer to nylon. The only material mentioned in the text of his patent is silk, as being the material of which the ribbons are to be made. The Court reaches the conclusion, however, in view of the fact that nylon was being developed in the intervening years for various uses, and in view of the fact that nylon is referred to in the patent to Francis and others in the prior art, that it was obvious to substitute nylon for silk; and that, therefore, the step taken by Ploeger is not a product of the inventive faculty but merely the result of the mechanical skill of a person ordinarily skilled in the art.

The mere fact that Gruendel might have been working on a different problem than the one in which Ploeger was interested and that possibly he did not foresee all of the uses and the benefit of the step that he took, if it be true, does not detract from the value of his patent as a grant of a monopoly or as an anticipatory reference.

This Court had occasion to refer to this subject in another connection. In Werner v. Watson, D.C., 128 F.Supp. 471, 472, the Court stated:

"Patents, however, are granted on structures rather than on ideas under our patent law, and the mere fact that an inventor is unable to foresee the possibilities of the structure that he devises does not detract from its force and effect as prior art.

"Perhaps one of the most striking illustrations of this principle is found in the case of Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 14, 54 S.Ct. 752, 78 L.Ed. 1453. That celebrated case involved the prolonged litigation between De Forest and Armstrong over the right to priority of invention of the so-called feed back radio circuit. The fact that De Forest's work was earlier than Armstrong's was not disputed. It was claimed, however, that De Forest's work should not receive full weight because he did not realize what the circuit that he accidentally hit upon could be used for and practically laid it to one side. The Supreme Court held that this was immaterial and awarded the palm of victory to De Forest."

I might add that in that litigation, it appeared that De Forest was working on an entirely different problem than Armstrong. And yet he was awarded priority.

The Supreme Court, in the decision in which that long history culminated, Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, at page 14, 54 S.Ct. 752, at page 757, indicated that it was immaterial that the inventor was unaware of the potencies and values more important than the uses which were immediately apparent and that these potencies and values were dimly apprehended.

The Supreme Court concluded with this statement:

"The benefit of all alike belonged to the inventor."

This Court, therefore, reaches the conclusions that, for the reasons summarized, the Ploeger patent is invalid, in

that, in the light of the prior art, the additional step taken by the inventor was obvious and not the product of inventive faculty.

There remains now the question of infringement. This Court is of the opinion that it is sound judicial administration for a trial court to pass on all of the principal issues of a case instead of disposing of it on one issue, if it can be done. The reason for this course is obvious. The Court had occasion to do so in the past two or three weeks in an action pertaining to an entirely different field.

Several years ago in a patent infringement case, Trenton Industries v. A. E. Peterson Manufacturing Co., D.C., 165 F.Supp. 523, at page 529, this Court said:

"It is the view of the court that while this conclusion"—namely, adjudication of the invalidity—"might in itself be sufficient to dispose of the first count of the complaint, it is desirable, generally, for a District Court, whenever possible, to dispose of all of the issues of the case, for reasons that are obvious. Consequently, the court will proceed to determine the issue of infringement, that is, whether the defendant must be deemed to have infringed the patent if the patent were held valid."

On this basis, the Court will proceed to adjudicate this issue, that is, the issue of infringement. Two exhibits were introduced by the plaintiff which originated from the defendant. Each of these exhibits was a ribbon that apparently was being sold by a customer of the defendant. The ribbon consisted of two halves. One half of the ribbon was what is known as a correcting strip, to be used for the purpose of making corrections. The other half was a printing strip, consisting of a nylon fabric backed by nylon film, fused together at the edges. The Court concludes that this structure reads on the claims of the plaintiff's patent.

The mere fact that something else was added to the original structure covered by the plaintiff's patent, namely, the correcting strip, does not save the structure from a charge of infringement if the charge can be sustained otherwise.

In Marston v. J. C. Penney Co. Inc., 353 F.2d 976, the Court of Appeals for the Fourth Circuit said:

"One cannot avoid infringement by an addition to a patent, even though the addition is important to the use intended for the resulting article."

It is claimed on behalf of the defendant, however, that during the period when the defendant is charged with infringing the plaintiff's patent the defendant had on hand a great deal of material which it had purchased from the plaintiff. Obviously, the use of such material cannot constitute and does not constitute infringement. It is also admitted by the defendant that, in addition to articles so manufactured, the defendant fabricated other ribbbons out of materials that were purchased elsewhere.

It is claimed by the defendant that the ribbons in this last group did not infringe the patent. However, no specimens of the ribbons of this last class were produced, and the Court may not dismiss the charge of infringement on any such basis as that at this time. The question of damages for infringement is one for an accounting, and the Court will not pass upon it at this time. It merely concludes that the two specimens of the defendant's products produced at this trial do read on the claim of plaintiff's patent. The Court is not in a position to determine at this stage of the litigation—and it may not be necessary to decide it at all—whether those specimens were fabricated out of material originating from the plaintiff or out of material purchased by the defendant elsewhere. As stated before, those are matters to be considered if an accounting should follow, and only then.

Accordingly, the Court will render judgment on the merits in favor of the defendant on the first cause of action of the complaint, in view of the fact that the patent is adjudicated invalid.

The second cause of action is one for false marking, under Title 35, United States Code, Section 292. That statute provides as follows in subsection (a):

"Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, or sold by him, the name or any imitation of the name of the patentee, the patent number, or the word 'patent', 'patentee', or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made or sold by or with the consent of the patentee, * * * shall be fined not more than $500.00 for every such offense."

Subsection (b) provides that:

"Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."

The specific charge under this section is that the defendant, in selling its typewriter ribbons, distributed a leaflet containing the following statement, "Patented Construction backing keeps type clean". It should be noted that neither the name of the patentee nor the number of any patent is stated. There is no imitation of the name of a patentee or any counterfeiting or imitating of his mark.

The evidence leads the Court to the conclusion that there was no intent either to counterfeit or imitate the mark of the patentee, or to deceive the public or to induce the public to believe that a "thing was made or sold by or with the consent of the patentee". It should be borne in mind that this statute is a very drastic one. It is a penal statute. The Court is of the opinion that a cause of action has not been made out and will render judgment in favor of the defendant on the merits on the second cause of action.

The third cause of action involves an alleged breach of a trade secret. It is claimed that the plaintiff disclosed a trade secret to the defendant which the defendant used improperly. Both the plaintiff and the defendant are business concerns. The defendant is a customer of the plaintiff. The plaintiff's principal business is cutting ribbon from fabric for manufacturers who, in turn, fabricate the ribbon into its ultimate forms. There was no confidential relation between the plaintiff and the defendant.

Accepting the plaintiff's testimony, the defendant came to him, and in the course of a conversation mentioned that he was having difficulty in fusing the two elements of the ribbon together. The plaintiff then told him that he had a way of doing it, and showed him a method of using what is called a "hot knife", that is a knife raised to a very high temperature by electricity, cutting the ribbon with that knife, and at the same time heating it to a point where it melts and the two elements become welded.

It is claimed that after this disclosure the plaintiff asked the defendant to keep the matter confidential. The fact of this request is denied. However, even if it were made, obviously it cannot be construed to mean that the defendant should not use this process, for the very purpose of disclosing it was to help the defendant in its own business, the defendant being a customer of the plaintiff.

The most favorable construction, from the plaintiff's standpoint, that can be placed upon the request was that the defendant should not disclose it to other persons and make this process public, because the plaintiff was intending to apply for a patent.

Under those circumstances, there is no violation of a trade secret in this case, and the Court will render judgment on the merits in favor of the defendant on the third cause of action.

This opinion will constitute the findings of fact and conclusions of law.

Counsel may submit an appropriate judgment.