**FILMON PROCESS CORPORATION,**
Appellant,

v.

**SPELL–RIGHT CORPORATION et al.,**
Appellees.

No. 21527.

United States Court of Appeals
District of Columbia Circuit.

Argued April 18, 1968.

Decided July 16, 1968.

Mr. Edward C. Gonda, Philadelphia, Pa., with whom Mr. Irvin A. Lavine, Washington, D. C., was on the brief, for appellant.

Mr. William D. Hall, Washington, D. C., with whom Mr. Elliott I. Pollock, Washington, D. C., was on the brief, for appellees.

Before BASTIAN, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge.

This is an appeal from a judgment entered for defendants, after trial without a jury. As appears from its opinion,[1] the District Court rejected the first count in the complaint of plaintiff-appellant for infringement of a patent on a "printing ribbon" on the ground that the invention was obvious in light of the prior art, and hence the patent was invalid. The District Court also held that defendants, now appellees, were not guilty of false marking, under 35 U.S.C.

1. 274 F.Supp. 312 (D.D.C.1962).

§ 292, as alleged in the second count, and that there had been no breach of trade secrets as claimed in the third count. Appellant argues that the trial judge applied incorrect legal standards to clearly erroneous findings. We disagree and affirm.

## A. *Invalidity of Patent*

1. Certain comments of the trial judge are cited as showing he did not accord proper weight to the statutory presumption that a patent is valid, 35 U.S.C. § 282. We think it plain, however, that the trial judge was merely alluding to the principle that the presumption of validity is weakened where the file wrapper references show that the examiner did not consider closely related prior art invoked by defendant to show obviousness.[2]

This is a strong case for invocation of that principle. Plaintiff's action is for infringement of a patent issued to Ploeger in 1961 for a printing ribbon, specifically a ribbon of two layers—a strip of flexible, pliable, ink-absorbent material fused along the extreme longitudinal edges to a shield of ink-impervious nylon film. The application encountered a citation by the examiner to the Francis patent 2,657,157. Francis's search for a printing ribbon with a backing that would keep the keys from striking the inked material, becoming dirty and requiring shut-down of the machine for periodic cleaning, led him to fuse a thermoplastic film (which includes nylon) across the entire width of ink-absorbent fabric, the two layers touching at all points. To differentiate from Francis,[3] Ploeger stressed novelty in the feature of fusing the two layers solely along the extreme longitudinal edges.[4] The patent examiner accepted this and the patent issued.

The patent examiner did not, however, make reference to the German Grundel patent issued in 1957, which also discloses an attempt to improve printing ribbons by affixing a thermoplastic ink impervious film to the edges of the ribbon.[5] As Grundel says:

It has been found that these problems can be solved in a very simple way by using a thermoplastic film to cover one side of the ink ribbon, joining this film to the ink ribbon, or ink screen, respectively, by thermoplastic bonding on a very small strip along the longitudinal edges. The ink-carrying tissue on the entire surface of the ink ribbon, or ink screen, is thus covered by only a loosely touching film, yet, through thermoplastic bonding, this film is firmly joined at its borders to the tissue, thus preventing any shifting and assuring perfect originals or duplicates.

Grundel thus reveals the idea of bonding the film and the ribbon along the

---

2. *See, e. g.,* American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977, 989 (8th Cir. 1966); T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (7th Cir. 1966); cf. Lorenz v. F. W. Woolworth Co., 305 F.2d 102 (2d Cir. 1962).

Appellant seeks to undermine the prior art of Grundel on the grounds that there is no indication that the examiner did not think it too irrelevant to warrant mention. We disagree, because Grundel is significantly closer to Ploeger's invention than the patents cited by the Examiner. Appellant also seeks to restore the presumption to full force by arguing that Grundel, a foreign patent, must be narrowly limited to its plain disclosures. Becket v. Coe, 69 App.D.C. 51, 98 F.2d

332 (1937). Granting that principle, we still think Grundel meets that test.

3. Ploeger urged that the amount of ink the ribbon would hold was drastically reduced by the method disclosed by Francis. The bond was created by the melted thermoplastic film permeating the pores of the absorbent material across the entire ribbon surface, and this naturally cuts down the ribbon's absorbent capacity.

4. This feature was claimed to result in creating a reservoir expanding the quantity of ink held by the ribbon.

5. This feature is not affected by certain contentions made by plaintiff concerning proper German usage.

edges, which the patent examiner viewed as the non-obvious aspect of the Ploeger patent. The fact that the patent examiner did not·refer to Grundel plainly undercuts the weight to be attributed to issuance of a patent to plaintiff's assignor.

2. Appellant claims signficant differences between Ploeger and Grundel, primarily relating to the method of bonding. Since Grundel only mentioned using silk as the ink-carrying part of the ribbon, and silk is non-fusible, the bond indicated in Grundel is formed by melting the thermoplastic film into the borders of the fabric, in other words using the thermoplastic itself as an adhesive. Ploeger argues that under one of his claims, the bond at the edges is a true weld, formed by heating both a fusible nylon ribbon and a fusible nylon film. Presumably this affords a significantly stronger bond, because of its chemical basis, than the adhesive method of fusing thermoplastic to fabric. Be that as it may, the difference in the type of bond is not so great as to render Ploeger's result non-obvious once Grundel's idea is considered as the background of prior art.

We note that Ploeger's application included claims for his invention where the ink bearing strip would be non-meltable fabric, such as silk or cotton, and he described the bond to be formed by melting on the nylon as a "fusing" of the thermoplastic to the fabric. His patent specification also states that when nylon is used as the ink-bearing material, that nylon may be "fused" with the nylon film by heating both. This phrasing indicates either that the difference in the types of bonding was not considered critical, or alternatively that the "weldable" quality of nylon was so obvious as to require no special mention. Both processes may be described as "fusing."

We note further that another claim in the Grundel patent clearly contemplated fusion by heat, calling for the addition of a third material, also thermoplastic. The two thermoplastics would thus be "welded" in the same sense as Ploeger. As nylon came increasingly to be used as the ink-carrying material in typewriter ribbons, it was an obvious ribbon material to substitute for silk. When applying the Grundel idea of sealing film and ribbon at the edges, it was also obvious to make the bond by using the known thermoplastic quality of nylon, and heating both ribbon and film rather than just the film.

We uphold the determination that the patent was invalid.

## B. *Rejection of False Marking Count*

Appellant's second claim alleged a violation of the first paragraph of 35 U.S.C. § 292(a). The law provides:

§ 292. *False marking*

(a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, or sold by him, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made or sold by or with the consent of the patentee; or

\*　\*　\*　\*　\*　\*

Shall be fined not more than $500 for every such offense.

(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

There was evidence that defendant Spell-Right Corp. had continued to send out advertising materials stating "Patented Construction Backing Keeps Type Clean" along with its product, a typewriter ribbon half inked and half a white substance for masking typing errors, after the firm had ceased to use ribbon processed by plaintiff in accordance with its patented idea. The trial judge held that there had not been the statutorily required intent to deceive the public or to counterfeit or imitate plaintiff's mark.

■ 1. We first consider, and reject, defendants' contention that the judgment is not appealable. It is urged that 35 U.S.C. § 292(b) is a criminal statute, that the double jeopardy clause prohibits appellate review of a finding of not guilty in a criminal case where the United States is the prosecutor,[6] and that the same rule bars an appeal challenging the correctness of a judgment against a private party bringing a qui tam action to enforce 35 U.S.C. § 292. We put aside the question whether the double jeopardy question is the same when the appeal is by a private person rather than the Government. In our view the double jeopardy clause does not apply where the nub of the action is civil qui tam enforcement of essentially remedial provisions.[7] We are in agreement with the judicial pronouncements that 35 U.S.C. § 292(b), while penal, is not a criminal statute.[8] In our view, that position is a sound basis for rejecting the double jeopardy claim in case of an action by an informer for misuse of his patent mark without his consent.[9] That provision is designed to protect the exclusiveness of the use of the invention granted to the patentee. The patentee is given this remedy to protect his patent position, and as a practical matter, the patentee is the only likely enforcer of it, as recovery requires proof that the statements were made without his consent. We think the statute's remedial purposes outweigh the conceptual difficulties posed by the ostensibly non-compensatory character of the penalty relief awarded against a defendant who appropriates a patentee's mark.[10] Further, although the point pressed herein was not discussed, appellate courts have frequently reviewed claims that a finding of no violation of 35 U.S.C. § 292 was clearly erroneous.[11]

■ 2. Defendant prevails, however, on the point that the record amply supports the trial judge's determination that requisite wrongful intention was

6. Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904).

7. *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); Helvering v. Mitchell, 303 U.S. 391, 404, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

8. Sippit Cups, Inc. v. Michael's Creations, Inc., 180 F.Supp. 58 (E.D.N.Y.1960); Trabon Engineering Co v. Eaton Mfg. Co., 37 F.R.D. 51 (N.D.Ohio, 1964). Contra Newgold v. American Electrical Novelty & Mfg. Co., 108 F. 341 (S.D.N.Y. 1901).

   We recognize that in *Sippit Cups* the court held that in an action under 35 U.S.C. § 292 a privilege against discovery could be invoked by an individual defendant, though not a corporate defendant.

   We express no comment on that ruling. Perhaps the court assumed that the individual defendant would also be subject to Government prosecution for the $500 fine.

9. Plaintiff-appellant unsuccessfully sought to amend its complaint to allege liability under the second paragraph of § 292(a) applicable to false representation that an article has been patented.

   We need not consider whether and to what extent the same considerations would prevail in an action brought under the second paragraph of § 292, where the action is not predicated on use of another's mark without his consent.

10. Appellees rely on language in the Committee Reports, reporting the 1952 revision of the patent laws, as indicating that § 292 is a "criminal" statute. We think that language does not undercut the conclusion that insofar as enforceable by an informer the statute is remedial. The change merely permitted enforcement by the Government through collection of a "fine"; it did not alter the basic character of this informer's action.

11. *E. g.,* Santa Anita Mfg. Corp. v. Lugash, 369 F.2d 964 (9th Cir. 1966), cert. denied, 389 U.S. 827, 88 S.Ct. 83, 19 L.Ed.2d 83 (1967); G. Leblanc Corp. v. H. & A. Selmer, Inc., 310 F.2d 449 (7th Cir. 1962), cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963); Rohr Aircraft Corp. v. Rubber Teck, Inc., 266 F.2d 613 (9th Cir. 1959).

lacking. Such a determination can be disturbed, as clearly erroneous, only in rare instances.

### C. *Rejection of Trade Secrets Claim*

■ 1. Appellant's third cause of action, for breach of trade secrets, rests on a claim that at the request of appellee Wolowitz, president of Spell-Right, Ploeger solved a problem confronting Wolowitz [12] and gave him the method in confidence that was later breached. Wolowitz testified he devised the method himself. The trial judge held that even crediting plaintiff's version there was an obvious permission granted to Wolowitz to use this idea, and therefore no damages flowed from the use. We agree.

■ On appeal, however, plaintiff points out that Wolowitz applied for, and got, a British patent on the method in question, and that damages will lie for this breach of the confidence reposed in Wolowitz by Ploeger. We need not and do not consider that question. The complaint, the pretrial order, and the trial of the action proceeded on the theory that Wolowitz and Spell-Right had wrongfully appropriated the trade secret to their use in making their ribbons, not that it had improperly disclosed the secret or patented it. The British patent was not even introduced in evidence in plaintiff's case-in-chief. When it was introduced relevancy was claimed on an entirely different point. Nor is there evidence that the process was secret at the time of Wolowitz's British application. On the question fairly presented, permission to use, the trial judge's ruling is fully supported and dispositive.[13]

Affirmed.

12. Half of the ribbon manufactured by appellee Spell-Right is a normal typewriter ribbon, the other half is made of, or coated with, a white camouflaging substance, which can be used, after backspacing, for quick elimination of errors by whitening them out. At first, there were difficulties in devising a way of holding the two parts of the ribbon together, while keeping the ink on the typing part of the ribbon from seeping onto the white material.

13. Moreover, plaintiff has not alleged or proved any damages flowing from the supposed breach of confidence or misuse of the secret.