**CENTER FOR PARTICIPANT EDUCA-TION, Steve Buchanan, et al., Plaintiffs,**

**v.**

**Stanley MARSHALL, as President of the Florida State University, et al., Defendants.**

**Civ. A. No. 1745.**

United States District Court,
N. D. Florida,
Tallahassee Division.

Jan. 12, 1972.

Arnold D. Levine, Tampa, Fla., Kent Spriggs, Tallahassee, Fla., for plaintiffs.

· Rivers Buford, Jr., Tallahassee, Fla., Atty. State Bd. of Education, Gene T.

Sellers, Tallahassee, Fla., for Board of Regents.

Robert D. Bickel, Gen. Counsel, Tallahassee, Fla., Wilfred C. Varn, Tallahassee, Fla., for Stanley Marshall, President, Florida State University.

## MEMORANDUM-ORDER
### PRELIMINARY STATEMENT OF THE ACTION

MIDDLEBROOKS, District Judge.

On December 13, 1971, after having been denied temporary injunctive relief by this Court on October 1, 1971, plaintiff Lieberman filed a supplemental complaint for injunctive relief seeking, *inter alia,* a mandatory injunction "directing and requiring defendants to readmit Jack Lieberman as a student in good standing at the Florida State University, Tallahassee, Florida, without any restriction." This cause is before this Court solely for determination of the validity *vel non* of plaintiff Lieberman's suspension, all other issues raised by the pleadings to be heard and tried at a later time as authorized by Rule 54(b), Federal Rules of Civil Procedure.

The events giving rise to plaintiff Lieberman's suspension have been chronicled in this Court's Opinion-Order of October 1, 1971, but for purposes of this proceeding, this Court will adopt findings of fact and will incorporate them in full as part of this order.

As is pertinent herein, plaintiff alleges that defendant Marshall in suspending and dismissing plaintiff from the Florida State University has denied him certain First Amendment rights and deprived him of procedural due process and equal protection under the law. It is further alleged that the administrative procedures through which plaintiff travelled caused him to be placed in double jeopardy in violation of his Fifth and Fourteenth Amendment rights.

Defendant by answer denied the allegation that plaintiff did not receive sufficient, timely notice of the suspension hearing scheduled before defendant on November 6, 1971. It was further denied that the President of the University was not empowered to conduct a *de novo* hearing on suspension or to conduct appellate review of university court proceedings. It was also denied that any action by defendant Marshall resulting in plaintiff's suspension was tainted by any constitutional infirmity.

As gleaned from plaintiff's trial memorandum, the issues for determination in this proceeding may be stated as follows:

### I

Whether defendant's executive order, postponing commencement of all Center For Participant Education classes until review of course syllabi could be accomplished, and the university penal code read in conjunction therewith, are unconstitutionally vague and overbroad under the First and Fourteenth Amendments to the United States Constitution. Center For Participant Education shall hereinafter be referred to as CPE.

### II

Whether defendant violated plaintiff's First Amendment rights by dismissing him for engaging in a speech and assembly activity.

### III

Whether due process was violated when the defendant President of the University drew the charges, investigated the case and acted as the ultimate reviewing authority.

### IV

Whether the presidential review violated procedural due process in that the notice of hearing was constitutionally deficient and whether defendant in fact possessed authority to conduct such review.

### V

Whether reconstruction of the trial record by the University President in the manner accomplished was a constitutional violation.

## VI

Whether presidential review and suspension subsequent to university court proceedings exonerating plaintiff violated plaintiff's constitutional right not to be twice put in jeopardy for the same offense.

## VII

Whether the suspension of another student at the university for a similar violation and her ultimate reinstatement as a student in good standing denied plaintiff Lieberman his right to equal protection under the law in light of his suspension and dismissal from the university.

Thus, that portion of the complaint as may be relative to this proceeding having been put at issue, this cause came on for final hearing on January 3, 1972, at which time testimony was taken and evidence was received.

## FINDINGS OF FACT

(1) The purpose of the CPE program at Florida State University is to provide to the University and Tallahassee communities an academic supplement to the general academic curricula offered on campus. A wide variety of thought-provoking subjects are offered and discussed in these "courses" with the idea of stimulating new centers of interest for students and members of the community and generating broader horizons of learning. Instructors of these various "edu-groups" serve without compensation although each group is eligible for a small sum for reimbursement for materials used as course aids. Classes are conducted on campus at University facilities and under supervision of the University administration.

Plaintiff Lieberman was scheduled to serve as instructor during the fall quarter 1971 in a course entitled "How to Make a Revolution in the USA". Before the first week of CPE classes could be held, however, the defendant Marshall, President of Florida State University, per executive order, postponed commencement of all CPE classes until a review of course syllabi could be accomplished by the Board of CPE and the University administration. This action to postpone classes was concurred in by the board of directors of the CPE program.

On Thursday evening, September 23, 1971, plaintiff Lieberman had originally been scheduled to hold his first "class". Notwithstanding the executive order of defendant, which this Court finds was known to plaintiff Lieberman, plaintiff Lieberman assembled with students in university facilities on that date to hold his class. At this meeting a representative of the administration introduced himself to plaintiff Lieberman and reminded him of defendant's executive order postponing the convocation of CPE classes pending review of course syllabi. Having been given this admonition plaintiff Lieberman continued with his discussion of the course.

On the following day, Friday, September 24, 1971, plaintiff Lieberman was notified that a preliminary hearing would be conducted to determine whether he was in violation of defendant Marshall's executive order for having conducted a class on the evening of September 23, 1971. Plaintiff Lieberman then met on the afternoon of September 24, 1971, with the Judicial Officer of the University to be heard on this charge and was offered an opportunity to give explanation in his behalf. Following this administrative hearing, described in the notice to plaintiff Lieberman as a "preliminary hearing", plaintiff Lieberman was placed on interim suspension effective September 24, 1971. At the date and time of hearing before this Court on application for temporary restraining order plaintiff Lieberman had been scheduled to be heard on his "appeal" of his administrative suspension. This appellate hearing was delayed in deference to the first hearing in this Court on plaintiff Lieberman's application for temporary restraining order. Testimony disclosed that although plaintiff Lieberman had not been afforded a

full plenary hearing as contemplated by the rules and regulations of the university, one would be held on short notice at his request.

Following this action the university administration disapproved the teaching of the Lieberman course and at least one other course under the aegis of CPE and Florida State University. In all other respects, however, the CPE program continued to operate.

(2) Following plaintiff's interim suspension, plaintiff requested and was granted a full hearing before the university honor court on October 11, 1971. At this hearing plaintiff was represented by private counsel. These proceedings terminated upon entry of judgment acquitting plaintiff of any violation of university rules and regulations. Thereupon, an appeal was then taken on behalf of the university to the student supreme court, which appeal resulted in affirmance of the decision of the honor court on November 2, 1971. Following the student supreme court hearing the university appealed the decision to the university president as ultimate reviewing authority.

(3) On November 3, 1971, one of plaintiff's advisors, a second year law student, was given oral notice that the defendant Marshall would review plaintiff's case on the afternoon of November 6, 1971. This student advisor in turn notified Lieberman's private counsel. Plaintiff's private counsel was also notified of the hearing by a representative of the university. The following day, a written notice to the same effect was hand delivered to plaintiff's listed place of residence informing plaintiff of the time, place and nature of the hearing and the procedure to be followed at the hearing. On November 5, 1971, plaintiff made a request through his law student advisor that a continuance in the proceedings be granted in view of the unavailability of certain of plaintiff's witnesses and in view of plaintiff's intent to attend a rally in Tampa, Florida, on the date set for hearing. This request

was denied in a letter addressed to plaintiff from the university judicial officer.

(4) The president of the university conducted the hearing on November 6, 1971, as scheduled. Testimony was heard and taken and plaintiff was represented throughout the proceedings by counsel. Plaintiff, however, did not choose to attend. At this hearing all parties agreed that a transcript of the proceedings in this court on plaintiff's application for temporary restraining order would be used and in addition counsel for plaintiff was allowed to summarize the testimony of plaintiff and plaintiff's witnesses who were unable to attend the hearing. On November 7, 1971, plaintiff was informed by written notice of defendant's decision indefinitely dismissing plaintiff from the Florida State University on the basis of his violation of the president's executive order and upon violation of his probationary status.

(5) During this same period of events, another edu-group leader was charged and disciplined for violation of the president's executive order but her suspension was lifted a few days later and she was readmitted to her classes. However, it was disclosed that this student was not on probation and did not have a past history of disruptive conduct within the university as did plaintiff. It was also disclosed that one other instructor of the numerous other edu-group leaders held her "class" during the ban but that she went unpunished because her violation of defendant's order went unnoticed as a result of some administrative oversight.

(6) The Florida State University student handbook in effect during the fall quarter of 1971 defines and limits students' rights and responsibilities. In addition to enumerating the elements of procedural due process in disciplinary proceedings including the right to assistance of counsel (right to advice) and the right of appeal to the university president, the handbook also sets forth the right of students to assemble, discuss, debate and to disseminate personal

and group opinion; the right to initiate and conduct organizations and programs consistent with the institutional program of higher education and university policy; and the right to use university facilities in accordance with university regulations. Included also in the handbook is a code of student conduct and discipline. This Court specifically finds that this handbook was in effect and distributed to the student body prior to September 23, 1971.

(7) This Court finds that plaintiff was duly notified of the charges against him, the reasons therefor, the time and place of final hearing and the right and opportunity to be heard and to confront and cross-examine his accusers as required under university rules and regulations. Whether the procedures provided and followed were adequate to meet the requirements of due process is a legal question to be answered in this Court's conclusions of law.

(8) The evidence fails to disclose that defendant as the chief executive officer of the university was influenced by extraneous political pressures from members of the Florida Legislature in his decision to take disciplinary action against plaintiff, which action ultimately resulted in the dismissal of plaintiff from the Florida State University. Rather, the greater weight of the evidence reveals that the defendant Marshall acted as the puctilious administrator and enforcer of university rules and regulations in accordance with the authority vested in him under Florida law, and that having found a wilful violation of his executive order to have been made by plaintiff and that plaintiff had previously been suspended and reinstated and placed on probation for disrupting university affairs, he determined that dismissal from the university was required.

(9) Additionally, the evidence discloses that the university rules and regulations and disciplinary procedures emanating therefrom have been applied to all students equally and that there has been no discrimination proven against defendant in his manner of enforcement of the university rules and regulations.

(10) Having conducted a trial *de novo* in the matter of plaintiff's suspension this Court finds that plaintiff had adequate notice of defendant's executive order suspending implementation of the fall quarter CPE program and that notwithstanding that ban plaintiff wilfully disobeyed the presidential edict and conducted his "class." Plaintiff attempts to avoid the implication that he acted wilfully to disobey the executive order by stating that he announced at the meeting of his class that he was not "teaching his class." This court cannot accept this explanation when it is undisputed that prior to the meeting this plaintiff distributed leaflets on campus which leaflets recognized that an executive order was in effect prohibiting the teaching of the courses during the review period and in which leaflets it was precisely stated that the course would be taught at the time and place that it was in fact taught.

(11) The defendant Marshall, as President of Florida State University at the time of the interim suspension of the plaintiff Lieberman, had ample justification to arrive at a conclusion that to allow a student with a past history for disrupting orderly university processes to flaunt a lawful order without his being severely disciplined would have an adverse effect on the efficient administration of the lawful aims and objectives of the university.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter of and parties to this action. Title 28, United States Code, Section 1343(3); Title 42, United States Code, Section 1983.

█ Among the statement of general policies and regulations contained in the student handbook is that body of administrative rules requiring upright conduct of the student on campus as relates to the rights of his fellow students and the authority of university officials and pro-

viding for appropriate disciplinary action against those who offend these rules. The power of a university president to oversee and to formulate rules and regulations of this type is a rudimentary principle of law often challenged but thus far unrejected. Papish v. Board of Curators of University of Missouri, 331 F.Supp. 1321 (W.D.Mo.1971). See also Bright v. Nunn, 448 F.2d 245 (6th Cir. 1971); Sword v. Fox, 446 F.2d 1091 (4th Cir. 1971); Gardenhire v. Chalmers, 326 F.Supp. 1200 (D.C.Kan. 1971); Bistrick v. University of South Carolina, 324 F.Supp. 942 (D.C.S.C. 1971); Speake v. Grantham, 317 F.Supp. 1253 (S.D.Miss.1970); Barker v. Hardway, 283 F.Supp. 228 (S.D.W.Va.1968), aff'd 399 F.2d 638 (4th Cir. 1968); Buttny v. Smiley, 281 F.Supp. 280 (D.C. Colo.1968); Hammond v. South Carolina State College, 272 F.Supp. 947 (D.C. S.C.1967).

Under existing Florida statutory law, such power is specifically delegated by the Board of Regents, the governmental body having original rule-making power governing Florida universities, to the president of each institution of learning within the state. See Sections 240.001 and 240.042, Florida Statutes, F.S.A. Necessarily, the president of the university "[has] an inherent general power to maintain order and exclude those who are detrimental to the student body and institution's well-being, so long as [he] exercise[s] sound discretion and [does] not act arbitrarily or capriciously." Barker v. Hardway, supra, 283 F.Supp. at 235. In accord, Speake v. Grantham, supra, and Zanders v. Louisiana State Board of Education, 281 F.Supp. 747 (W.D.La.1968).

When the rule-making authority of the university and the rules themselves are placed under judicial scrutiny, courts should proceed cautiously:

"* * * Specifically, the test for the reasonableness of college regulations is whether such regulations 'measurably contribute(s) to the maintenance of order and decorum within the educational system', are calculated to prevent interference with ' "the normal activities of the University" ' or obstruction to its function 'to impart learning and to advance the boundaries of knowledge', or are important in maintaining 'order' and 'normal operations'. In testing any college regulation for reasonableness under these criteria, the Courts, it should be emphasized, are not concerned with 'whether such rules are wise or expedient but merely whether they are a reasonable exercise of the power and discretion of the school authorities.' Burnside v. Byars, supra (363 F.2d [744] at p. 748 [5th Cir. 1966]). (footnotes omitted)." Sword v. Fox, supra, 446 F.2d at 1097.

See also Dickey v. Alabama State Board of Education, 273 F.Supp. 613 (M.D. Ala.1967); Due v. Florida A. & M. University, 233 F.Supp. 396 (N.D.Fla.1963); Barker v. Hardway, supra; Speake v. Grantham, supra.

Guided by this weighty authority, this Court now turns to discussion of those seven issues raised by plaintiff's supplemental complaint.

## VAGUENESS AND OVER-BREADTH

Plaintiff contends that defendant's executive order and the regulations contained in the university penal code and applicable thereto are vague and overly broad in that they are lacking in specificity relative to proscribed conduct and do not reasonably relate to the "nature of the university and its goals and purposes." In short, the constitutional standard sought to be imposed is that standard governing proscribed criminal conduct. In support of this argument much reliance is placed on Soglin v. Kauffman, 295 F.Supp. 978 (W.D.Wis. 1968), aff'd 418 F.2d 163 (7th Cir. 1969). This Court finds plaintiff's position untenable and *Soglin,* supra, easily distinguishable from the case, *sub judice.* See *Papish,* supra, and Esteban v. Central Missouri State College, 290 F.Supp. 622 (W.D.Mo.1968), aff'd 415 F.2d 1077 (8th Cir. 1969).

Plaintiff spearheads his argument with the position that the executive order was not only imprecise but also unwritten and unpublished. Citing *Esteban,* supra, and numerous other authority, the Court in Hasson v. Boothby, 318 F.Supp. 1183 (D.C.Mass.1970) declared otherwise:

> "[S]tudents may be severely punished by a school administration under its inherent authority without a prior published rule specifically prohibiting the conduct in question. \* \* \*" *Ibid.* at 1187.

Furthermore, "flexibility and elbow room are to be preferred over specificity." Speake v. Grantham, supra, 317 F.Supp. at 1265. See generally, General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education, 45 F.R.D. 133 (W.D. Mo.1968).

■ Remembering that the university has inherent authority to maintain order and discipline, it cannot be doubted that plaintiff's suspension as a disciplinary measure was a reasonable exercise of defendant's authority in light of the executive order and university rules and regulations. That there was any vagueness in the specific conduct prohibited under the executive order cannot be challenged in this instance. Not only has this Court found that plaintiff was warned by a university representative on the night his "class" was to be taught of the existing executive order but also that prior thereto plaintiff circulated on campus a leaflet acknowledging the existence of that order and openly giving notice that he would flaunt the president's authority and conduct his "class" in derogation of the order. Thus, plaintiff was not unaware of the order or doubtful of whether his actions would constitute disobedience thereunder within the prohibition of the university rules and regulations. Therefore, the vagueness argument must fall. Papish v. Board of Curators, supra.

■ Plaintiff urges also that because a First Amendment activity is involved the executive order and the university rules and regulations are overly broad and unreasonable. Where a challenged rule or regulation is relevant to the lawful mission of the university and regulates such conduct as would be offensive to orderly operation and administration of the university then such rule or regulation should not succumb to the constitutional challenge of overbreadth because a First Amendment freedom has been incidentally limited by application of the rule or regulation. In speaking of limitations which can be reasonably imposed on free speech by school administrators in exercise of their lawful authority to maintain school discipline, the Fifth Circuit Court of Appeals iterated:

> "\* \* \* The constitutional guarantee of freedom of speech 'does not confer an absolute right to speak' and the law recognizes that there can be an abuse of such freedom. The Constitution does not confer 'unrestricted and unbridled license giving immunity for every possible use of language and preventing the punishment of those who abuse this freedom.' \* \* \*." Blackwell v. Issaquena County Board of Education, 363 F.2d 749, 753, 754 (5th Cir. 1966).

Concurring in this recognized limitation to and regulation of First Amendment rights, the Sixth Circuit Court of Appeals explained:

> "School officials must be given wide authority in maintaining discipline and good order on campus. This cannot be accomplished if students are permitted to flout their teachers and disobey lawful orders issued by [them]." Bright v. Nunn, supra, 448 F.2d at 249.

Finally, perhaps the most terse capsulation of the foregoing policy of judicial laissez-faire as regards school administration is to be found in Epperson v.

Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968):

" * * * Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not *directly* and *sharply* implicate basic constitutional values. * * * (Emphasis supplied)." *Ibid,* at 104, 89 S.Ct. at 270.

■ It is thus manifestly evident that the executive order and the rules and regulations herein challenged require adherence to standards of conduct which benefit the student and the university and warn of the potential punishment of intentional acts of disruption to or interference with the orderly functions of the university; consequently, they are not constitutionally infirm as being either vague or overly broad. Sword v. Fox, supra; Papish v. Board of Curators, supra. Having determined that the president's order and the rules and regulations relative thereto are not constitutionally deficient, this Court now focuses attention to plaintiff's argument that they were applied in such manner so as to curtail students' rights of free speech and assembly.

## FIRST AMENDMENT RIGHTS

In regard to the First Amendment issue plaintiff simply contends that defendant may not impose any restraint on his teaching or discussing the subject matter of his course under university auspices. Plaintiff's expression of free speech, it is argued, when unaccompanied by any acts of violence or other acts of disturbance, falls within the sanctity of protected on-campus First Amendment rights, and reliance in support thereof is placed on Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

■ It has become a time-tested rubric of the law that freedom of speech is not an absolute right. See e. g., Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); *Tink-*

*er,* supra. When the student and his attendant rights are placed in the environs of the college or university, realization of that foregoing pronouncement is sometimes startling. Yet it is a plausible rule received with approbation in the plethora of school discipline cases being decided in federal courts. In *Tinker,* supra, the Court recognized the potential conflict of the rights of students *vis-a-vis* the rights of school officials and commented as follows:

" * * * (T)he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. * * *. Our problem lies in the area where students in the exercise of First Amendment rights collide with the rules of the school authorities. * * *

\* \* \* \* \* \*

" * * * Certainly where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of a school,' the prohibition cannot be sustained.

\* \* \* \* \* \*

" * * * But conduct by the student, in class or out of it, which for any reason—whether it stems from time, place or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker,* supra, 393 U.S. at 507–509, 513, 89 S.Ct. at 737.

See also Bright v. Nunn, supra; Burnside v. Byars, supra; Speake v. Grantham, supra; Bistrick v. University of South Carolina, supra.

■ Examination of the testimony reveals that the executive order delaying implementation of the CPE program and plaintiff's subsequent suspension for violation thereof was a necessary and prop-

er exercise of administrative authority towards maintenance of the orderly operation of and lawful administration of university programs. Balancing as *Tinker*, supra, suggests this right of defendant [to promulgate rules and regulations and to take appropriate disciplinary action for violation thereof in order to maintain the orderly function of the university] against the right of plaintiff to exercise his First Amendment rights, this Court finds defendant's action to have been constitutionally permissible. This Court has found that plaintiff wilfully disregarded defendant's edict in order to provoke a confrontation with the administration. This open defiance of defendant's authority coupled with plaintiff's prior episode of campus disruption afforded defendant Marshall a substantial factual basis for plaintiff's dismissal from the university. Such defiance by plaintiff did not constitute on part of defendant a speculative fear, but a real and immediate fear of conduct potentially disruptive of the university routine. Although plaintiff's First Amendment rights may have been affected incidentally, it is obvious that plaintiff was not disciplined because of his exercise of these rights but because of his prohibitive and violative conduct. Thus, plaintiff's actions find no protection in the First Amendment and this argument too must fall. *Tinker*, supra; Bright v. Nunn, supra; Burnside v. Byars, supra; Speake v. Grantham, supra; Barker v. Hardway, supra. See also Jones v. State Board of Education, 279 F.Supp. 190 (M.D.Tenn.1968), aff'd 407 F.2d 834 (6th Cir. 1969).

## DUE PROCESS

The argument presented by plaintiff relative to his denial of due process by defendant is two-fold: first that he was denied an impartial review and secondly that the procedures utilized by the defendant offended the traditional notions of due process.

▇ Taking up first plaintiff's argument that he was denied an impartial hearing because "the ultimate trier of fact was the same person that was also both the victim of Jack Lieberman's acts and conduct and the prosecutor that brought the charges aimed at securing his dismissal," this Court is of the view that this procedure did not violate due process. What plaintiff attacks is the involvement of university officials in the review of a student's dismissal when those officials also have ultimate authority to suspend and dismiss the student. This same constitutional argument has withstood the challenge in other student discipline cases:

"* * * There is no violation of procedural due process when a member of a disciplinary body at a university sits on a case after he has shared with other members information concerning the facts of a particular incident. * * *. This limited combination by a school [administrator] of prosecutorial and adjudicatory functions is not fundamentally unfair in the absence of a showing of other circumstances, such as malice or personal interest in the outcome of a case." Jones v. State Board of Education, supra, at 200.

In accord, Jones v. Snead, 431 F.2d 1115 (8th Cir. 1970); Student Association of State University of New York, Inc. et al. v. Toll, 332 F.Supp. 455, U.S.D.C., E.D. N.Y. (1971).

This Court has specifically found that the decision of the defendant Marshall to dismiss plaintiff was free of extraneous political pressures and personal prejudice and was made on the basis of substantial evidence before him at the hearing of November 6, 1971; therefore, plaintiff cannot complain of any fundamental unfairness in this proceeding.

The other side of plaintiff's due process argument focuses primarily on the alleged inadequacy of notice and defendant's authority to conduct ultimate review of the case and to do so in a *de novo* fashion.

▇▇ Beginning with Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961), wherein the United

States Court of Appeals for the Fifth Circuit affirmatively determined that students at tax-supported institutes were entitled to minimal procedural safeguards, the status of the law in this area has undergone continuous refinement so that at present it is a generally accepted statement of the law that in order to satisfy due process requirements, a university disciplinary proceeding should afford the student: one, the notice of the charge against him and the specific grounds therefor; two, the names of witnesses against him and a summary of their testimony; third, the opportunity to be heard in his own defense and to present evidence on his own behalf; fourth, punishment based only upon substantial evidence adduced at the hearing. See Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1060 (1969). See also Wright v. Texas Southern University, 392 F.2d 728 (5th Cir. 1968) and Bistrick v. University of South Carolina, supra, 324 F.Supp. at 950. Upon the evidence adduced before this Court, it is concluded that the four above requirements have been satisfied and that plaintiff was not denied procedural due process. Although the notice of November 4, 1971, is challenged as insufficient and untimely, shortness of notice alone would not obviate the validity of these proceedings. Norton v. Discipline Committee of East Tennessee State University, 419 F.2d 195 (6th Cir. 1969). It must be remembered that "the touchstones of the application of due process are reasonableness and fairness in view of all the facts and circumstances of the particular case." Barker v. Hardway, supra, 283 F.Supp. at 237. In the instant case, plaintiff not only was given written notice two days prior to the hearing, he was represented at the hearing by counsel who were present and allowed to cross-examine witnesses and to summarize testimony of his own witnesses who were not present. Thus, the totality of the circumstances point to a full and fair hearing free from any constitutional defect.

Plaintiff also questions the authority of defendant under the university rules and regulations to conduct review of disciplinary proceedings after such matters have been heard by the university honor court; and even if defendant possessed such authority, plaintiff urges he exceeded the limits of his authority in conducting a *de novo* review.

The university rules and regulations clearly provide that the president shall be the ultimate authority in matters of student conduct and discipline. See Rules 200.1b; 200.8. This authority having been duly established in the rules and regulations, this Court is loathe to question the wisdom and expediency of these rules and regulations, and should only determine the reasonableness of their exercise. See Sword v. Fox, supra; Barker v. Hardway, supra; Burnside v. Byars, supra. Guided by the many decisions in this area, this Court finds the provisions of the rules and regulations calling for final review by defendant to be reasonable. See e. g. Student Association of State University of New York v. Toll, supra.

Insofar as plaintiff attacks the review proceedings held before defendant because he conducted a *de novo* review in plaintiff's case as opposed to traditional appellate review this Court finds that argument unpersuasive. *De novo* hearings in university disciplinary actions are a preferred form of review and have not been found to affront constitutional standards governing such proceedings. See e. g., Zanders v. Louisiana State Board of Education, supra; Bistrick v. University of South Carolina, supra. Moreover, by conducting a trial *de novo* in review of this matter, this Court has cured any deficiencies which may have existed in prior administrative or quasi-judicial proceedings. Barker v. Hardway, 399 F.2d 638 (4th Cir. 1968). So too this argument must fall.

## DOUBLE JEOPARDY

In regard to his double jeopardy argument plaintiff contends that defendant

during the course of his review of the case received "new evidence", viz., a transcript of testimony taken in this Court on plaintiff's application for temporary restraining order, and that additionally, defendant had no authority to make a new and contrary determination as to whether plaintiff violated his executive order and should be punished.

■ First and foremost it is doubtful whether the Fifth and Fourteenth Amendment protections guarding an accused against being twice put in jeopardy are applicable to the case *sub judice*. It has been held that disciplinary proceedings are not by their nature criminal proceedings but are civil proceedings so that an accused would not be entitled to claim the Sixth Amendment's guarantee of right to counsel. See e. g. Barker v. Hardway, supra, 283 F.Supp. at 237. See also Grabinger v. Conlisk, 320 F. Supp. 1213 (N.D.Ill.1970) wherein right to counsel was denied on the basis that a disciplinary proceeding was purely civil. In various civil proceedings courts have uniformly ruled that a former jeopardy argument would be inapplicable. See Dunn v. California Department of Corrections, 401 F.2d 340 (9th Cir. 1968); Filmon Process Corp. v. Spell-Right Corp., 131 U.S.App.D.C. 374, 404 F.2d 1351 (1968). Thus this case being a noncriminal proceeding not involving a loss of liberty, the double jeopardy protections of the Constitution would not apply and the disciplinary proceedings held before defendant would not be rendered invalid.

Furthermore, as has already been noted, *de novo* review in disciplinary proceedings is a preferred mode of administrative review and is neither an unreasonable nor arbitrary exercise of administrative prerogative. There has not been a whisper of improper conduct on part of defendant which has prejudiced plaintiff and deprived him of the fundamental safeguards afforded by the Due Process Clause. Hence there is no legal basis for this Court to pre-empt the administrative procedures established and to order new guidelines implemented.

Lastly, whatever deficiencies existed in prior proceedings have been cured and rendered moot in the *de novo* trial before this Court. Barker v. Hardway, supra.

## EQUAL PROTECTION

Plaintiff's final argument relates to defendant's action against him and two other "edu-group" leaders who were not as severely punished for violation of defendant's executive order. Of course, the claim of plaintiff is that his dismissal was in contravention of his constitutional right to equal protection under the law. Primarily argued is that plaintiff was the focus of selective discrimination.

■ The evidence disclosed that one student edu-group leader, who held her class meeting in derogation of defendant's order, went undisciplined by the administration because her violation went undetected. The other edu-group leader was charged and reprimanded but allowed reinstatement to her classes because of her good standing. The evidence adduced before this Court reveals that the decision to punish plaintiff and not others in a similar fashion was reasonably and fairly made and should not be disturbed by this Court. In the absence of evidence to the contrary, the fact that the university and its administrative officials decide to punish some students and not to punish others guilty of similar conduct would not be tantamount to action constitutionally impermissible. See Zanders v. Louisiana State Board of Education, supra; Speake v. Grantham, supra; Jones v. State Board of Education, supra.

In sum the evidence disclosed a good faith effort on part of the university to police the campus for possible violations of defendant's executive order. Those violators apprehended were disciplined and punishment was rendered on the basis of the severity of their prohibitive conduct and the prior conduct record of the offender. There was no showing that defendant selected plaintiff for dismissal because of extraneous political pressure or because of personal preju-

dice. In this setting it can only be concluded that the decision to dismiss plaintiff was reasonably and fairly made and supported by substantial evidence.

## CONCLUSION

The Court finds that plaintiff was not denied any constitutional rights by defendant, that he was accorded a fair and reasonable hearing in compliance with all of the Constitution's mandates; that there was a highly reasonable and just basis for his suspension due to prohibitive and violative conduct on his part which was clearly established by substantial evidence; and that he was not subjected to any arbitrary or capricious treatment by defendant. Therefore, it is

Ordered that in conformance with the above and foregoing findings of fact and conclusions of law, defendant is directed to present to this Court an order disposing of those issues raised in the supplemental complaint within the time and in form prescribed by the Federal Rules of Civil Procedure.